UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**ROBERT EARL COUNCIL,**
    Plaintiff,

v.                                                   Case No. 2:22-cv-08-CLM-HNJ

**WEXFORD HEALTH SERVICES, INC.,**
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Earl Council sues Defendant Wexford Health Services, Inc. for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The magistrate judge has entered a report (doc. 77), recommending the court deny Wexford's motion for summary judgment (doc. 69). Wexford objects to the magistrate judge's report and recommendation. (Doc. 78). For the reasons stated within, the court **OVERRULES** Wexford's objections (doc. 78).

> A.  **The magistrate judge correctly viewed the evidence in the light most favorable to Council.**

Wexford first asserts that the magistrate judge erred in crediting Council's version of events over Wexford's because, according to Wexford, Council's testimony is blatantly contradicted by his medical records. (Doc. 78, pp. 2–9). The court disagrees. At summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-movant. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013). Council, who was the non-moving party, presented sworn, specific facts supporting his version of events. *See id.* at 1253 (stating specific facts consist of "non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety[,]" "describe the external world as [the non-movant] observed it at the time[,]" and "are based on [the non-movant's] first-hand personal knowledge, not [the non-movant's] subjective beliefs"). For

example, Council testified that nurses told him several times that they couldn't give him any pain medications because the doctor hadn't prescribed any pain medications for him. (Doc. 71-1, pp. 18–20). Council also said that the only medication he received during his first 21 days at Kilby was ibuprofen from Nurse Fuller who gave it to him for 3 to 4 days even though "she wasn't supposed to." (*Id.*, pp. 19–20).

"[C]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony." *Sears v. Roberts*, 922 F.3d 1199, 1207 (11th Cir. 2019). And though Wexford relies on the "blatantly contradicts the record" exception of *Scott v. Harris*, 550 U.S. 372 (2007), the court finds that this exception doesn't apply here. "[T]here's a big difference between the record evidence presented in *Scott* and" the medical records "proffered here." *Sears*, 922 F.3d at 1208. As the Eleventh Circuit has explained, documentary evidence, including medical records, that contradict a plaintiff's testimony just pit correctional officials' word against the plaintiff's word. *See id.* "That is different from *Scott* where a videotape of the incident definitively established what happened and what did not." *Id.*; *see also Sears v. Warden Okeechobee Corr. Inst.*, 762 F. App'x 910, 916–17 (11th Cir. 2019) ("[T]he medical records here are not the same as 'incontrovertible' video evidence that courts must accept over contradictory sworn statements, since those records involve people and all their attendant mental infirmities, biases, and limitations-in their creation."). So the magistrate judge properly applied the normal summary judgment standard in evaluating Council's claims.

A reasonable juror could also agree with Council's assertion that his medical records were inaccurate. (*See* Doc. 71-1, p. 21). Council reported 10/10 pain to nurses twice on February 1, 2021. (Doc. 69-3, pp. 21–22). It is undisputed that Council received no pain medication until 6:48 pm on February 2, 2021. (Doc. 69-1, p. 11). Despite not receiving any pain medication, Council reportedly told Dr. Wilcotte Rahming at 11:32 am on February 2, 2021, that his pain was only 3/10. (Doc. 69-3, pp. 28–30). A reasonable juror could find it implausible that Council had such a reduced pain level without receiving any medication to address his pain. As a result, a juror could believe Council's testimony over Council's medical records.

Under Council's version of events, Dr. Rahming refused to prescribe Council with any pain medication from February 1, 2021 to February 22, 2022. As the magistrate judge reasoned, a jury could find that Dr. Rahming's failure to provide Council with any pain medication after he was discharged from the hospital for life threatening injuries suffered during an assault amounted to deliberate indifference. (Doc. 77, pp. 42–43). Plus, the magistrate judge correctly explained that even if the court were to accept Dr. Rahming's version of events as true, a reasonable juror could still find deliberate indifference. (*See id.*, pp. 39–42). As the magistrate judge recounts in his report, Council arrived at Kilby with a swollen-shut left eye, sideways swelling on the back of his head, cracked collarbone, cracked ribs, and extreme pain accompanied by damage to his vision. (*Id.*, p. 36). But Dr. Rahming admits that he did not prescribe Council with any pain medication until he prescribed him 325 mg of Tylenol at 6:48 pm on February 2, which was more than 24 hours after Council received his last dose of pain medication at UAB. (Doc. 69-1, p. 11). "[A]n unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990). So even if a jury credits Dr. Rahming's version of events, it could find that his delay in treating Council's complaints of pain constituted deliberate indifference.

**B.     The magistrate judge applied the correct legal standards for final policymaker liability.**

Wexford next asserts that even if Dr. Rahming were deliberately indifferent to Council's serious medical needs, the magistrate judge erred in recommending that the court find that Wexford could be held liable for Dr. Rahming's actions. "When a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). So "the requirement of a municipal policy or custom" is "an essential element of a § 1983 claim" against private contractors, like Wexford. *See id.* at 453. A plaintiff can establish municipal liability in three ways: (1) an express policy; (2) a widespread practice so permanent and well-settled that it counts as a custom; or (3) the act or decision of an official with final policy-making authority. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

*1. Legal standard:* Council does not contend that Wexford has an official policy or a widespread practice of constitutional violations. Instead, Council asserts that Dr. Rahming's single decision to deny Council medical treatment gives rise to municipal liability because Dr. Rahming had final policymaking authority over medical decisions at Kilby. The determination over whether an official has final policy-making authority "is a question of law to be resolved by the trial court judge." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989). These principles guide the court's analysis:

- Municipalities have section 1983 liability only for acts officially sanctioned or ordered by the municipality.
- Only those municipal officials who have final policymaking authority may subject the municipality to section 1983 liability for their actions.
- The determination of whether or not a particular official has final policymaking authority is governed by state law, including valid local ordinances and regulations.
- The challenged action must have been taken pursuant to a policy adopted by the official or officials responsible for making policy in that particular area of the city's business, as determined by state law.

*Chabad Chayil, Inc.*, 48 F.4th at 1229.

When the party at issue is a corporation contracting with the state, the relevant state law for policymaking determinations are the contracts between the corporation, the state, and the corporation's employees. *Howell v. Evans*, 922 F.2d 712, 724 (11th Cir. 1991). And "a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997) (collecting cases).

Applying these principles, the Eleventh Circuit has held that the physician's assistant at a county road prison whose medical decisions were subject to no supervision or review was a final policymaker whose actions could subject the County to municipal liability. *See Mandel*, 888 F.2d at 794.

In *Mandel*, the County argued that the district court erred in finding that the County could be liable for an isolated incident of its physician assistant's refusal to x-ray or provide treatment for a prisoner's injured leg. *Id.* at 791. The Eleventh Circuit disagreed pointing out that "municipal liability may attach to a single decision made by a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question." *Id.* at 793. And because the physician assistant's "medical decisions were subject to no supervision or review, except to the extent that [the physician's assistant] himself, in his sole and unsupervised discretion, deemed appropriate," the court found that the district court correctly held that the physician's assistant was "the sole and final policymaker with respect to medical affairs at the road prison." *Id.* at 794. As a result, the circuit court held that the County could be held liable for the deliberate indifference of the physician's assistant. *See id.* at 794–95.

*2. Application:* The record does not include the relevant contracts between Wexford, the Alabama Department of Corrections, and Dr. Rahming. But during his deposition, Kenneth Dover, the Vice-President of Operations at Wexford, testified that Dr. Rahming "was the ultimate authority, health care authority for patient care" at Kilby. (Doc. 69-4, p. 7). Dover also said that Dr. Rahming had ultimate oversight over the nurse practitioners and that how medical care was conducted at Kilby was at Dr. Rahming's prerogative. (*Id.*, pp. 7–8).

In its objections, Wexford states that Dr. Rahming is not a final official policymaker. (Doc. 78, p. 16). But Wexford cites no evidence that contradicts Dover's deposition testimony or supports this conclusory assertion. Although inmates can apparently file grievances asserting that they are not receiving appropriate medical care, the record includes no evidence about the policies or procedures surrounding these grievances and who reviews them. (Doc. 77, pp. 31–32, n.29). So based on Dover's deposition testimony and the record before the court, the court agrees with the magistrate judge that Dr. Rahming had unfettered discretion over medical decisions at Kilby. Under *Mandel*, that makes Dr. Rahming the official with final policymaking authority.

Wexford, however, insists that Council cannot establish municipal liability based on a single incident of allegedly unconstitutional activity even if the constitutional deprivation were allegedly caused by a final policymaker. As explained above, the Eleventh Circuit has squarely rejected this argument. And in recent years, the circuit court has continued to state that one way to establish municipal liability is to show that a single decision by an official policymaker violated the plaintiff's constitutional rights. *Chabad Chayil, Inc.*, 48 F.4th at 1229. None of the cases Wexford cites says anything to the contrary. Instead, these cases establish only that a plaintiff cannot rely on his experience alone to show that a municipality had a widespread practice so permanent and well-settled that it counts as a custom. *See, e.g.*, *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310–12 (11th Cir. 2011). "The instant case, however, concerns altogether different methods of proving custom or policy: the delegation of final policymaking authority from one official to another." *Mandel*, 888 F.2d at 791. Because the record before the court establishes that Dr. Rahming had final policymaking authority over medical decisions at Kilby, Wexford can be held liable for his alleged deliberate indifference. *See id.* at 794.

—

In sum, having considered the record, the magistrate judge's report, and Wexford's objections, the court **ADOPTS** the magistrate judge's report and **ACCEPTS** the recommendation. Consistent with that recommendation, the court **DENIES** Wexford's motion for summary judgment (doc. 69). The court will enter a separate order setting this case for trial.

**Done** and **Ordered** on September 10, 2024.

_/s/ Corey L. Maze_
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE